656 N.W.2d 709 (2003)
2003 ND 25
In the Interest of T.M.H., a child.
Damon Anderson, Assistant State's Attorney, Petitioner and Appellee,
v.
T.M.H. (Minor), D.S. (Mother), Grand Forks County Social Service Center (Custodian), Respondents, and
J.H. (Father), Respondent and Appellant.
No. 20020138.
Supreme Court of North Dakota.
February 19, 2003.
*710 J.H., pro se, respondent and appellant.
Damon E. Anderson, Assistant State's Attorney, Grand Forks, N.D., for petitioner and appellee.
NEUMANN, Justice.
[¶ 1] J.H. appeals from the juvenile court's amended judgment placing custody of his son, T.M.H., with the Division of Juvenile Services. We affirm.
[¶ 2] In September of 2001, T.M.H., a minor, failed to return to his father's home, was charged with absenting and was ordered into the custody of Grand Forks County Social Services. Grand Forks County Social Services referred T.M.H. to the Eckert Group Home in Williston. On November 19, 2001, T.M.H. was found to be in need of treatment or rehabilitation as a delinquent child after leaving the Eckert Group Home, stealing an automobile, and driving it to Grand Forks. T.M.H. was again ordered into the custody of Grand Forks County Social Services. T.M.H was allowed to return to the Eckert Group Home, but was subsequently removed for violating the Home's rules. After a hearing on January 28, 2002, the juvenile court ordered T.M.H. into the custody of the Division of Juvenile Services until his eighteenth birthday, December 7, 2002. J.H. disagreed with the placement of T.M.H. in a residential treatment program, as selected by the Division of Juvenile Services and the Youth Correctional Center, and asked the juvenile court to reconsider its order. At a hearing on April 9, 2002, the juvenile court amended the order, placing T.M.H. with the Division of Juvenile Services until September 27, 2002. J.H. appeals.
[¶ 3] J.H. argues the Division of Juvenile Services' placement of T.M.H. in a residential treatment home was improper because (1) a Division of Juvenile Services caseworker was prejudiced in her decision regarding T.M.H.'s placement, (2) T.M.H. received a positive score on his risk evaluation, and (3) J.H. and T.M.H. were denied due process by the Division of Juvenile Services and the guardian ad litem.
[¶ 4] An appeal of a juvenile court's judgment "must be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." N.D.C.C. § 27-20-56. Our review of a juvenile court's order is similar to a trial de novo. In the Interest of A.E., 1997 ND 9, ¶ 3, 559 N.W.2d 215. But see In re D.Q., 2002 ND 188, ¶ 28, 653 N.W.2d 713 (Neumann, J., concurring) (stating "de novo review in juvenile cases is nothing more than a vestigial echo of an earlier time when all questions of fact in bench *711 trials were subject to de novo appellate review"). We review the evidence independently and our review is not limited to a determination of whether the juvenile court's findings are clearly erroneous. A.E., 1997 ND 9, at ¶ 3, 559 N.W.2d 215. While we afford the juvenile court's findings appreciable weight, we are not bound by them. Id.
[¶ 5] Our statutes provide for the disposition of delinquent children. If a child is found to be a delinquent child, the child may be committed to the Division of Juvenile Services for placement in a secure facility. N.D.C.C. § 27-20-31(5). A juvenile court's order may be modified or vacated if it is in the best interests of the child. N.D.C.C. § 27-20-37(2). A party to the proceeding or other person having an interest in the child may petition the court for relief. N.D.C.C. § 27-20-37(3).
[¶ 6] J.H. argues the Division of Juvenile Services' placement of T.M.H. was improper because a Division of Juvenile Services caseworker promised T.M.H. could return to J.H.'s home if T.M.H. scored well on the Youth Correctional Center's evaluation. Because the caseworker was "prejudiced," J.H. argues, she reneged on the promise and did not release T.M.H. after he achieved a positive score on his Youth Correctional Center risk evaluation. However, no evidence exists in the record to show such a promise was made. To the contrary, the record shows T.M.H. and J.H understood T.M.H. had been placed with the Division of Juvenile Services because he had been evicted from the Eckert Group Home a second time for violating the Home's rules. During cross-examination at the hearing by the guardian ad litem, J.H. admitted both he and T.M.H. understood the second chance with the Eckert Group Home was T.M.H.'s last chance before the Division of Juvenile Services would take custody to arrange for T.M.H.'s rehabilitation. The transcript of the hearing shows J.H. acknowledged that the juvenile court's order allowed the Division of Juvenile Services to make decisions in T.M.H.'s best interest. J.H.'s argument that placement decisions were improper and based on prejudice is not supported by the record.
[¶ 7] J.H. argues the Division of Juvenile Services' placement was improper because T.M.H. scored well on his evaluation and because T.M.H. was not a "threat to society," he should have been released into J.H.'s custody. We disagree. The Youth Correctional Center's risk evaluation shows that while T.M.H. received a raw, "low risk" score of "2" on its evaluation, T.M.H. was considered an "aggravated 2," placing him in the "moderate risk" cluster of the scale. A score in the "moderate risk" cluster made him eligible for placement in a residential facility, not at J.H.'s home. The record supports T.M.H.'s score on the evaluation merited placement in a residential facility as recommended by the Division of Juvenile Services and the Youth Correctional Center.
[¶ 8] J.H. argues placement in a residential facility was improper because the community could provide all the required rehabilitation programs. Therefore, T.M.H should have been released to J.H.'s custody. The record shows community programs could not provide the help T.M.H. required. According to testimony, T.M.H. required anger management care, aftercare for alcohol use and drug use, and a structured lifestyle. The caseworker testified that the Grand Forks community offers programs such as Alcoholics Anonymous, Narcotics Anonymous, and anger management, but indicated those programs could not provide T.M.H. with the required structured lifestyle. Based on the record evidence, the community could *712 not provide T.M.H. with the required rehabilitation programs.
[¶ 9] J.H. argues he and T.M.H. were denied their due process rights by the Division of Juvenile Services and the guardian ad litem. We disagree. The record shows J.H. and T.M.H. were given all the appropriate hearings and were allowed to actively participate in the placement process. While the Division of Juvenile Services may not have allowed J.H. to make decisions, J.H. acknowledged at the hearing he understood custody of T.M.H. was in the Division of Juvenile Services and they had the final say in the decision-making process. As to the guardian ad litem, the record shows the guardian ad litem did not deny T.M.H. his due process rights. A guardian ad litem represents the best interests of a minor and not a minor's parents. The record shows the guardian ad litem properly represented the best interests of T.M.H. by ensuring T.M.H.'s input was included in the decision-making process. According to testimony at the hearing, T.M.H. himself wanted to stay in the program selected for him by the Division of Juvenile Services. The record shows J.H. and T.M.H. were not denied their due process rights by the Division of Juvenile Services or the guardian ad litem.
[¶ 10] From our independent review of the record, we conclude the evidence supports the juvenile court's findings and conclusions and its amended judgment is therefore affirmed.
[¶ 11] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.